1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  EDGAR RAUL SALAZAR,

11            Plaintiff,              No. 2:10-CV-1686 GGH

12      vs.

13  MICHAEL J. ASTRUE,                <u>ORDER</u>
    Commissioner of
14  Social Security,

15            Defendant.
    _____/
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18  Security ("Commissioner") denying his application for Supplemental Security Income ("SSI")

19  under Title XVI of the Social Security Act ("Act").  This complaint proceeds before the

20  undersigned by consent of the parties.  (Doc. Nos. 7, 10).  For the reasons that follow, plaintiff's

21  Motion for Summary Judgment (Doc. No. 20) is granted, the Commissioner's Cross Motion for

22  Summary Judgment (Doc. No. 23) is denied, the case is remanded for further proceedings, and

23  judgment is entered for the plaintiff.

24  \\\\\

25  \\\\\

26  \\\\\

BACKGROUND

Plaintiff, born September 2, 1945, applied protectively for SSI on July 20, 2005, alleging disability beginning November 1, 2001. (Tr. at 20.)[1]  Plaintiff alleged that he was disabled due to high blood pressure, arthritis, carpal tunnel syndrome, and hepatitis. (Tr. at 180.)

Plaintiff had previously applied for SSI in February 2000, and, on May 23, 2001, the administrative law judge found plaintiff not disabled because plaintiff was not unable to engage in substantial gainful activity for any continuous period of at least 12 months. (Tr. at 159.)

In a decision dated April 23, 2008, Administrative Law Judge ("ALJ") William C. Thompson, Jr. determined plaintiff was not disabled. The ALJ made the following findings:[2]

---

[1]  The application on file is dated February 13, 2006. (Tr. at 179.)

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the

1          1.      The claimant engaged in substantial gainful activity after
2               July 20, 2005, the application date  (20 CFR 416.920(b)
                and 416.971 *et seq.*).

3          2.      The claimant has the following severe impairments: carpal
                tunnel syndrome, arthritis of the lumbar spine, and hepatitis
4               C with interferon treatment (20 CFR 416.920.(c)).

5          3.      The claimant does not have an impairment or combination
                of impairments that meets or medically equals one of the
6               listed impairments in 20 CFR Part 404, Subpart P,
                Appendix 1 (20 CFR 416.920(d), 416.925 and 20 CFR
7               416.926).

8          4.      The claimant has the residual capacity to perform light
                work as defined in 20 CFR 416.967(b) except the claimant
9               can: bend, stoop, twist, squat, kneel, crawl, and climb
                occasionally; and handle, finger, and feel frequently with
10              unlimited reaching (including overhead).

11         5.      The claimant is capable of performing past relevant work as
                a quality control worker and water treatment technician.
12              This work does not require the performance of work-related
                activities precluded by claimant's residual functional
13              capacity (20 CFR 416.965).

14         6.      The claimant has not been under a disability, as defined in
                the Social Security Act, since July 20, 2005 (20 CFR
15              416.920(f)), the date the application was filed.

16   (Tr. at 22-26.)

17          In addition, the ALJ determined that changed circumstances rebutted the

18   presumption of continuing non-disability in this case, noting that while the prior ALJ had found

19   plaintiff not disabled because plaintiff had been engaged in substantial gainful activity, the

20   evidence on this application showed periods of time when plaintiff did not engage in substantial

21   gainful activity.  (Tr. at 20.)

22   <u>ISSUES PRESENTED</u>

23          Plaintiff has raised the following issues: (1) the ALJ failed to fulfil his duty to

24   protect claimant's interests; (2) the ALJ failed to properly credit the opinions of the examining

25       _____

26   burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

1  physicians without a legitimate reason for doing so; and (3) the ALJ failed to pose a legally

2  adequate hypothetical to the vocational expert.

3  LEGAL STANDARDS

4          The court reviews the Commissioner's decision to determine whether (1) it is

5  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

6  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

7  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

8  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

9  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

10  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).   The

11  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

12  resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing

13  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).  "The court will uphold the ALJ's

14  conclusion when the evidence is susceptible to more than one rational interpretation."

15  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

16  ANALYSIS

17          Res Judicata

18          At the outset, this court finds that the ALJ correctly determined that he was not

19  bound by the prior ALJ's determination of non-disability.  See Tr. at 20.  Generally, the

20  principles of res judicata apply to administrative decisions, although the doctrine is applied less

21  rigidly to administrative proceedings than to judicial ones.  See Chaz v. Bowen, 844 F.2d 691,

22  693 (9th Cir. 1988), citing Lyle v. Sec'y of Health and Human Servs., 700 F.2d 566, 568 n.2 (9th

23  Cir. 1983).  A claimant may overcome this presumption by proving changed circumstances.  See

24  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985), citing Booz v. Sec'y of Health and Human

25  Servs., 734 F.2d 1378, 1379-80 (9th Cir. 1984).  In this case, the ALJ found that there had been a

26  change in the law, as well as new and material evidence: while the prior ALJ found plaintiff not

4

1  disabled because he was engaged in substantial gainful activity, the evidence before the ALJ on

2  plaintiff's current application showed periods of time when plaintiff did not engage in substantial

3  gainful activity.  See Tr. at 20.  Based on these changes, the ALJ correctly determined that he

4  was not bound by the prior ALJ's findings, and that he was required to make new findings based

5  on the pertinent evidence.

6                          Consultative Examination

7              Plaintiff, who appeared pro se before the ALJ, argues that the ALJ failed to fulfil

8  his duty to protect plaintiff's interests, because the ALJ failed to order an updated consultive

9  evaluation and residual functional capacity ("RFC") assessment before determining that plaintiff

10 was capable of performing light work.  (Doc. No. 20 at 29-30.)  Plaintiff argues that the opinion

11 evidence was stale, because it was generated in 2006, prior to plaintiff's MRI.

12             The ALJ has an affirmative duty to assist a claimant in developing the record at

13 every step of the inquiry.  Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); see also

14 Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly

15 develop record and to assure that claimant's interests are considered).  When a claimant is

16 unrepresented, as plaintiff was in this case, the Ninth Circuit has articulated the ALJ's duty as

17 one "to scrupulously and conscientiously probe into, inquire of, and explore for all relevant

18 facts," being "especially diligent in ensuring that favorable as well as unfavorable facts and

19 circumstances are elicited."  See Vidal v. Harris, 637 F.2d 710, 713-14, citing Cox v. Califano,

20 587 F.2d 988, 991 (9th Cir. 1978).

21             One of the tools available to an ALJ in developing a record is the consultative

22 examination.  See 20 C.F.R. §§ 404.1512(e), 404.1517 ("If your medical sources cannot or will

23 not give us sufficient medical evidence about your impairment for us to determine whether you

24 are disabled or blind, we may ask you to have one or more physical or mental examinations or

25 tests.")  Generally, the Commissioner has broad latitude in ordering such an examination, but the

26 government is not required to bear the expense of examination for every claimant.  See Reed v.

5

1  Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  However, a consultive examination is normally

2  required where there is an indication of a change in a claimant's condition that is likely to affect

3  the claimant's ability to work, and the current severity of the claimant's impairment is not

4  established.  See 20 C.F.R. 404.1519a(b)(5).

5           In this case, the record reflects that plaintiff's back condition may have changed

6  between the examinations which formed the bases for the opinion reports, which were written in

7  2006, and the MRI, which was taken in 2007.

8           Plaintiff's MRI (generally the gold standard for reviewing spinal conditions such

9  as this one), taken June 15, 2007, reads that he has degenerative disc and facet disease of the

10  lower lumbar spine, including a broad-base disc bulge causing severe canal stenosis at L4-L5.

11  (Tr. at 388.)  The MRI also shows bilateral lateral recess narrowing at L4-L5 as well as marked

12  ligamentum flavum hypertrophy and a small synovial cyst seen posterior to the facet joint.  Id.

13  Plaintiff's MRI showed disc bulges also at L2-L3, L3-L4, and L5-S1, recess narrowing at L3-L4

14  and at L5-S1, and moderate canal stenosis at L3-L4.  Id.

15           Although plaintiff had previously been diagnosed with degenerative disk disease,

16  the opinion evidence of plaintiff's two examining physicians and one non-examining physician

17  does not refer to canal stenosis or to recess narrowing.  The report of examining physician Dr.

18  Seu, dated May 15, 2006, reads that plaintiff has not had an MRI or CT, and refers to a 2003 x-

19  ray  "with an impression of mild degenerative disk disease." (Tr. at 351).  The report of non-

20  examining physician Dr. Cistone, dated May 24, 2006, reads that as of September 2003, plaintiff

21  had an x-ray of the lower spine showing "min findings," and that as of May 2006, plaintiff had

22  full range of motion in his back.  (Tr. at 355.)

23           Dr. Magnussen examined plaintiff on October 11, 2006, and diagnosed plaintiff

24  with "degenerative disc disease, lumbar spine, with instability, L4-5, and facet arthritis, multiple

25  levels, with subluxation."  (Tr. at 364, 379.)   Dr. Magnussen characterized plaintiff's back pain

26  as Frequent and Slight, Occasionally raised to Moderate.  (Tr. at 380.)  Dr. Magnussen further

1   wrote that

2          I believe this is a non-surgical problem.  For flare-ups, short, unscheduled periods
          of physical therapy will be appropriate, and a home exercise program will be
3          necessary.  As far as chiropractic care is concerned, I do not believe he needs
          regular treatment, but rather, he should be allowed treatment for flare-ups,
4          estimated to be two times a month for chiropractic manipulation of the spine.

5   (Tr. at 383.)

6          Dr. Magnussen's report includes a review of x-ray reports from 1978 and 2003,

7   and additionally refers to the treating record of Dr. Alice Roszyk, beginning February 10, 2003.

8   (Tr. at 375.)  Dr. Roszyk's note for February 10, 2003 reads: "Told in the past he has

9   osteoarthritis in the lumbar sacral spine....Impression: chronic anthralgias, etiology

10  unclear....Most likely osteaoarthritis, with some soft tissue complaints superimposed." Id.  Dr.

11  Roszyk's note for September 22, 2003 reads: "Off and on back pain 15 years, no trauma.  Pain

12  with sitting more than 30 minutes, better with walking.  No radicular symptoms.....Diminished

13  range of motion of the back, but neurological negative.  He had slight tenderness PIP and MP

14  joints.  Impression: chronic low back pain....Low back pain secondary to lumbosacral sprain and

15  degenerative joint disease of the spine." Id.  Dr. Roszyk's note for May 14, 2004 reads: "He also

16  has chronic low back pain secondary to degenerative disc disease." Id.

17         The opinion reports of Drs. Seu, Cistone, and Magnussen were generated in 2006,

18  before the MRI was taken.  Despite the additional information about plaintiff's back condition

19  available from the MRI, the ALJ did not order a consultative examination.  See 20 C.F.R.

20  §§ 404.1512(e), 404.1517, 404.1519a(b)(5).  Additionally, the ALJ's opinion does not include

21  any discussion of the MRI report or analyze its possible impact on the physicians' opinions, nor

22  does it explain why a further consultative examination was not required under 20 C.F.R.

23  § 404.1519a(b)(5).   The ALJ's failure to address the MRI report or its findings, or to develop the

24  record fully about its value, was legal error.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1037-38

25  (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (finding legal error where

26  ALJ ignored medical evidence of claimant's impairments without explanation); Cotton v.

7

1   Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1986) (finding legal error where ALJ's findings
2   ignored medical evidence without giving specific, legitimate reasons for doing so), superceded
3   by statute on another point as stated in Bunnellv. Sullivan, 912 F.2d 1149 (9th Cir. 1990).  The
4   case must be remanded to the Commissioner for proper consideration of the MRI evidence, and,
5   if necessary, for a consultative examination.  See Cotton v. Bowen, 799 F.2d at 1408-09.

6                  Other Issues

7                  Because the court concludes that a remand is necessary for further development of
8   the record, the court need not determine plaintiff's other assertions of error.

9                  On remand, the ALJ may additionally consider the use of appropriate medical
10  evidence to determine the onset date of plaintiff's disability, if any.  See Armstrong v. Comm. of
11  Social Security Administration, 160 F.3d 587, 589-90 (9th Cir. 1998); De Lorme v. Sullivan, 924
12  F.2d 841, 848 (9th Cir. 1991), citing Social Security Ruling ("SSR") 83-20 (1983) ("At the
13  hearing, the administrative law judge (ALJ) should call on the services of a medical advisor
14  when onset must be inferred.  If there is information in the file indicating that additional medical
15  evidence concerning onset is available, such evidence should be secured before inferences are
16  made.")

17                 On remand, the ALJ may also wish to consider the impact of plaintiff's age, both
18  at the time of onset and at the time of determination, on any SSI payments to be made.  The court
19  notes that plaintiff will be 67 years old this year, that his current application was made when he
20  was 59 years old, and that his MRI was taken when he was 61 years old.  It is also unclear from
21  the current record what impact, if any, plaintiff's income or earnings history may have on his
22  eligibility for benefits.

23                 In light of the time taken between the date of application and this remand, the
24  court recommends that the matter be expedited upon return to the Commissioner.

25  \\\\\

26  \\\\\

8

CONCLUSION

      Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that

1.     Plaintiff's motion for summary judgment (Doc. No. 20) is granted;

2.     Defendant's cross-motion for summary judgment (Doc. No. 23) is denied;

3.     The case is remanded for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g);

4.     Judgment is entered for the plaintiff; and

5.     The Clerk of Court is directed to close this case.

DATED: March 5, 2012

               /s/ Gregory G. Hollows
               UNITED STATES MAGISTRATE JUDGE

ggh:rb
salazar1686.ss